13-0963-cv
*Cacchillo v. Insmed, Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of January, two thousand fourteen.

PRESENT:

> JOSÉ A. CABRANES,
> RICHARD C. WESLEY,
> PETER W. HALL,
> *Circuit Judges.*

———————————————————————

ANGELINE CACCHILLO,

> *Plaintiff-Appellant,*

> v.                                         No. 13-0963-cv

INSMED, INC.,

> *Defendant-Appellee.*

———————————————————————

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | Kevin A. Luibrand, Luibrand Law Firm, PLLC, Albany, NY. |
| **FOR DEFENDANT-APPELLEE:** | Robert P. Charrow, Laura Metcoff Klaus, Greenberg Traurig, LLP, Washington, DC; Cynthia Neidl, Greenberg Traurig, LLP, Albany, NY. |

Appeal from a February 19, 2013 decision of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be **AFFIRMED**.

Plaintiff Angeline Cacchillo appeals from an order of the District Court granting summary judgment to defendant Insmed, Inc. ("Insmed") on Cacchillo's claims, brought under New York law, for breach of contract, fraud, and negligent misrepresentation. We assume familiarity with the underlying facts and procedural history of this case.

We review *de novo* an order granting summary judgment, "resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought." *Burg v. Gosselin,* 591 F.3d 95, 97 (2d Cir. 2010) (internal quotation marks omitted). We affirm when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, "conclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion." *Davis v. New York,* 316 F.3d 93, 100 (2d Cir. 2002).

## DISCUSSION

### 1. Breach of Contract

Cacchillo asserts that there was a binding contract between herself and Insmed, under which she would participate in a Phase IIB Trial of the IPLEX drug in exchange for Insmed's promise to supply her with IPLEX—either through the market after FDA approval, through "compassionate use," or through future trials of the drug—until Cacchillo either died or was cured.

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Cacchillo contends that multiple disputes of fact remain with regards to several of these elements and that the District Court erred by holding that there were essential terms lacking such that a contract could not be implied-in-fact.

#### a. Statute of Frauds

Even if we assume, without deciding, that there was a contract implied-in-fact, Cacchillo's claim still fails to satisfy the requirements of New York's Statute of Frauds. "New York law provides that an agreement will not be recognized or enforceable if it is not in writing and subscribed by the party to be charged therewith and if the agreement by its terms is not to be

performed within one year from the making thereof." *Guilbert v. Gardner*, 480 F.3d 140, 151 (2d Cir. 2007) (internal quotation marks and alterations omitted). The requirement means that "full performance by all parties must be possible within a year," but it does not matter "how improbable it may be that performance will actually occur within that time frame." *Id.* (internal quotation marks omitted).

Cacchillo argues that the contract at issue here is not governed by the Statute of Frauds because it could have been completed by both parties within a one-year period. In particular, she argues that Insmed's obligations to provide her with IPLEX could have been completed within one year in any of the following ways: she could have had a poor response to IPLEX in the trial study; her "compassionate use" application to the FDA could have been denied; a better therapy could have been found for Cacchillo's condition; or Cacchillo could have passed away.

We hold that none of these possibilities would in fact allow Insmed to legally fulfill the terms of the putative contract within one year. First, if Cacchillo did not respond well to IPLEX or an alternative cure was found, that presumably would cause her to relinquish Insmed from its obligations under the contract. Under New York law, "a termination contingency that is exercisable only by the plaintiff," does not constitute a means by which a contract can be fulfilled within one year for Statute of Frauds purposes. *Burke v. Bevona*, 866 F.2d 532, 537 (2d Cir. 1989).

Second, if the FDA denied Cacchillo's "compassionate use" application, or she unfortunately passed away, that would effectively terminate the contract rather than constitute performance by Insmed. *See Darby Trading Inc. v. Shell Int'l Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 340 (S.D.N.Y. 2008) ("Plaintiff confuses actions which would fulfill the terms of the contract with actions that would defeat the purpose of the contract," such as "insolvency, bankruptcy, dissolution of defendant's business, . . . , impossibility of performance and breach of contract" (internal quotation marks omitted)). Since, under the putative contract, Insmed's obligation to supply Cacchillo with IPLEX was indefinite and incapable of being fulfilled within one year, we conclude that the Statute of Frauds bars her breach of contract claim.

### b. Promissory Estoppel

Cacchillo argues that even if the contract is found to be unenforceable under the Statute of Frauds, the court should still find Insmed liable under a theory of promissory estoppel. "In New York, promissory estoppel has three elements: a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of the reliance." *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (internal quotation marks omitted). When promissory estoppel is asserted to overcome a defense based on the Statute of Frauds, an "unconscionable" injury is required under New York law. *See id.*; *Robins v. Zwirner*, 713 F. Supp. 2d 367, 376 (S.D.N.Y. 2010).

Upon a close review of the record, we conclude that Cacchillo has not shown that she suffered an "unconscionable" injury by participating in the study. She asserts that she only participated in the study in reliance upon: (1) the statements on Insmed's website about

3

"compassionate use"; (2) Christine O'Neil's statement to the Cacchillos that pharmaceutical companies generally provide drugs to participants of clinical trials after their conclusion if the patient had done well; and (3) Amy Bartlett's representation that she would be put on "compassionate care" if she did well on IPLEX during the trial. Appellant's Br. at 4, 19.

However, the record shows that Cacchillo had been interested in participating in a trial of IPLEX since 2005, when she attempted to enroll in a study being conducted at the University of Rochester but could not because her age exceeded the eligibility limit. She subsequently offered to participate on an unofficial basis. Additionally, Cacchillo's husband testified that the couple was hoping that there would be a Phase III trial under which Cacchillo could continue to obtain the drug upon the completion of the Phase IIB trial. In recounting Amy Bartlett's statement about compassionate care, he stated, "we relied on it 100 percent, but the main focus was to get her in the trial." A429-30.

When asked whether she would have participated in the clinical trial if she had not seen the representations about "compassionate use" on the Insmed website, Cacchillo replied, in relevant part,

> I would probably say that without the compassionate use, I would probably not participate. If I—if I was sure that it was going to be—it was going to end at the end of six months, I'd have to be sure, there would have to be absolutely no possibility, somebody would have to tell me that you can't have it and it just doesn't exist, so I guess I can't argue with that, but if there's something out there, I'm going to go for it. I'm going to go after it. A103

We conclude, based upon this evidence and the record as a whole, that Cacchillo has not shown that she suffered "unconscionable" injury as a result of reasonable reliance upon the statements of Christine O'Neil and Amy Bartlett, and the representations on the Insmed website. Rather, the evidence indicates that Cacchillo would have participated in the Phase IIB trial regardless of these representations, in the hopes that there would be a subsequent Phase III trial or some other means of continuing on the drug. The record does not support a conclusion that after years of attempting to secure a spot in a clinical trial of IPLEX, Cacchillo would have decided not to participate had Christine O'Neil or Amy Bartlett not made the comments at issue and the Insmed website not contained information about compassionate use.

## 2. Fraud and Negligent Misrepresentation

To prove fraud under New York law, a plaintiff must show "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006).

To prove negligent misrepresentation under New York law, a plaintiff must show that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the

4

defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). The alleged misrepresentation cannot be a promise of future conduct, which are not actionable as negligent misrepresentations under New York law. *See id.* at 20–21; *Murray v. Xerox Corp.*, 811 F.2d 118, 123–24 (2d Cir. 1987).

Cacchillo argues that the response allegedly made by Amy Bartlett to the Cacchillos—after they asked her what would happen if Cacchillo "d[id] well" on IPLEX—that "they'll put her on compassionate care," constituted fraud. A108; Appellant's Br. at 22. Cacchillo further contends that the statement of Amy Bartlett, together with the representations on the Insmed website, constituted negligent misrepresentations.

Upon an independent review of the record, viewing all evidence in the light most favorable to Cacchillo, we agree with the District Court and hold that she has not presented sufficient evidence of fraud or negligent misrepresentation to defeat a summary judgment motion. We reach this conclusion substantially for the reasons stated by the District Court in its comprehensive and well-reasoned opinion. *Cacchillo v. Insmed, Inc.*, No. 1:10 Civ. 01199(TJM/RFT), 2013 WL 622220 (N.D.N.Y. Feb. 19, 2013).

## CONCLUSION

We have considered all of Cacchillo's arguments on appeal and find them to be without merit. Accordingly, we **AFFIRM** the February 19, 2013 decision of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5